Our next case is to be, we have an unusual calendar today, our next case has the appellant appearing, but the respondent has not appeared. Great. Mr. Mohr? Yes. I presume you're not going to try to save any time to rebut. That's correct, your honor. Anyway, may it please the court, good morning. Todd Mohr on behalf of Jeffrey P. Mohr and Remedy Golf. This case is pretty much a patent infringement case that is only focused on the defenses. Mr. Mohr and Remedy Golf stipulated to infringement if claim one was found to be valid. Can I just ask you a couple of administrative questions? Yes. Are you currently selling the accused product? Is your client currently selling the accused product? My client is not currently selling the accused product. Okay, so when I go on to Remedy Golf's website and see that they're selling some kind of switchblade golf pivot tool on its website, that is not the product that was enjoined by the district court? That's correct. Part of our stipulation as far as infringement, it was only the device that the locking mechanism centered on the pivot. Remedy Golf changed its design to where it was an improvement where there was a locking mechanism that locked from the side. We had showed that device, and I have one that operates like that in my briefcase, we had shown that device to the district court, showed it to counsel, and said this device, we're not stipulating that this device infringes on claim one, and they agree. Okay, so what you're selling on the website now is not what was enjoined? That's correct. In the court, maybe there was a response by what was Apelli's counsel, I mean, yeah, Apelli's counsel, that we still were selling these things on the website, and they were looking at the website, seeing pictures, but those pictures weren't updated, and the device that is being sold by Remedy Golf is not the same. Theoretically, or hypothetically, if we were to affirm the judgment, then is your client going to go into bankruptcy proceedings, and then therefore become judgment-proof? That I'm not sure what Mr. Moore is going to be doing. Mr. Moore is in a situation where he runs Remedy Golf, he has other investors, and it depends on... Is it true that Mr. Moore at one point communicated to Divix Golf that if this judgment becomes final, then Remedy will just escape the judgment by going into bankruptcy? Mr. Moore never communicated any such thing to Divix. There was a... So then Divix's status report that it filed to this court was false? Divix's... I took exception to Divix's status report because there were comments that I made to Divix's counsel that weren't from Mr. Moore or Remedy. I was questioning whether Divix or Remedy, with the condition of the golf industry currently right now, were going to be viable entities going forward. Did you respond to this status report? I was not ordered to respond to the status report when the court... This thing was in... How did you take exception to it? I called counsel for the other side and I said that is a total misrepresentation. But I'm not going to... Wait a second. You told opposing counsel that he made a total misrepresentation in this court and you didn't notify the court? He took my statements out of context and I didn't think that that's my place to get into an argument with the court and opposing counsel over that issue. Well, that's not an argument with the court. That's an argument to the court. In hindsight, I should have addressed that issue with the court. But when I was asked to provide a status report, I explained to the court, after the stay was lifted, what my intent was. It was always my intent to move forward once the stay was lifted. When I had conversations with Mr., his name escapes me now, Counsel for Divix... Mr. Pascoe. I had spoken with Mr. Pascoe and said, let's resolve this. What are these two companies going to do? Are they going to be in a point where they're going to have money to pay this judgment? My personal views and what I shared with Mr. Pascoe weren't representations from Remedy or Mr. Moore to Divix. Okay. Those were... When Mr. Pascoe says that Mr. Moore stated that, quote, Remedy and Mr. Moore are judgment proof and will file bankruptcy should the need arise, that's... You're saying that's a lie in court to us. I don't know that I said those exact words, but I... Wait a minute. Go ahead. Does that mean you don't know that you didn't say those exact words? I don't think I said those exact words. What I told Mr. Pascoe was, when we get to a point when this final judgment comes down, I don't know what Mr. Moore or Remedy's position is going to be. Do you know if you mentioned the word bankruptcy? I probably stated bankruptcy. Did you mention the word judgment proof? I don't believe I said Remedy was judgment proof. And in conversations that are talking about settlement, and I'm talking to him about trying to move them forward to where we would pay a reasonable amount without trying for them to catch the whole judgment, things are said and people talk about different things. You memorialized your conversation in any written form? I don't believe I did. There may be an email communication with Mr. Pascoe. My communications with Mr. Pascoe were not complete. I have emails where I tried to get to contact him, to talk to him about these issues, were unresponded to. I have emails where I'm chastising him for not responding to me. But I just, you know, I don't think that that should be the issue in this appeal. The basic issue is here is the district court error. And there's some factual findings that just are not consistent with the physical evidence. If you look at what the district court's holdings were, we first looked at anticipation and obviousness. Isn't the GT knife incapable of functioning in turf? No. That was a finding of the district court. And that's where Remedy, Moore, take exception to the district court's finding because that factual finding is simply not accurate. And what happens where I had a demonstration I would show you to demonstrate clearly that that's not possible. But I was told by the clerk that I have knives and the tools themselves here. I did not file a motion. You were told that by the clerk because the court told the clerk. Correct. To show you you could not bring weapons into the courtroom. Correct. Correct. I understand. I understand. So I assume you don't have them in your briefcase. Well, I was here with court staff, went through screening, and they're in a box, and they're in the briefcase. And they weren't considered weapons. I talked with people about it, and I haven't taken them out of my briefcase since they told me not to. And I apologize for that. Can you tell me what a key in a biscuit is? The briefs don't really explain it. I understand that's one of the locking mechanisms, and then there's another locking mechanism. But what's the key and what's the biscuit? If you look at the diagrams and the photographs that are in the appendix, I'm not sure, based on Mr. Jones' testimony, what it is. But if you look at the appendix, there's photographs of this. And what you have is you have all the mechanisms in a photo. Can you show me where the key in the biscuit is? Yes. If you look at page 1508. And you can see that this is a divot tool that divots intended to produce and show to the public. What you have is it's been taken apart on 1507. Is this your product? Did you choose products? No, that is Divots' product, Apelli's product that they manufactured and were intending to sell and may have sold some to the public using a key in the biscuit, the same mechanism that's in their knives. So when you look at this series of diagrams, what you basically have, starting from the beginning, is GT knives making knives. I believe Judge Hughes asked you to identify which parts were the key in the biscuit. Yes. And you were going to show us? Yes. So when I get back to the key in the biscuit part, this thing right here, there's a button. You're pointing to the lower right-hand page of 1508. And you'll see that there's four mechanisms that have been taken apart. What's the key is this rod-shaped thing. That's the key. If we hold exhibit page 1508 so that trial exhibit 3 is to the right of the page, then on the far left side you're referring to the oblong object above the circular object. That's correct. That's the key. And then this... How we make a record. I understand. Thank you, Your Honor. And so below it, the round part below... I'm confused. Is this... This isn't the GT knife. It is. What you have is what I'm showing you at the right on page 1508 is a GT knives mechanism taken apart. I thought this was your product. No, this is not. The point of this... I thought the GT knives was just a switchblade knife. That's correct. This isn't a switchblade knife. This... Let me back up here. If you go back all the way to the start of the exhibit, starting with trial exhibit WW on page 1496 of the appendix, you show three GT knives. And then if you look at the next page, they're open. Yeah, but these aren't the same. These are the ones you're talking about, right? These are the GT knives. Yes. Well, those aren't what you're showing us on 1508. Those all have knife blades. This is the thing where it has the fork-like thing. Correct, correct. But what I've done is if you follow the sequence of what we did in trial, we disassembled these. But this is not a disassembly of 1497 and 1498 because it has the fork thing, not a knife thing. Right, and it's to show the comparison because if you have these... But the key in the biscuit is in the knife, not in the fork-like thing. The key in the biscuit is also in... No, that's the whole point of your argument, isn't it? That there's a difference... No. Well, wait. We're getting caught up in something that ultimately I don't think is important. The key in the biscuit is what GT Knives says is in their knife. And I asked you to explain to me where that was in their knife. You're pointing to something in your product which you don't even call a key in a biscuit. I'm saying that's a key in a biscuit. I'm pointing to GT Knives making a divot tool using the exact... You're saying that the product on page 1508 is a GT Knives? Yes, it's called a Divot Master. Let me try. It's 1508. You see it's an exploded divot. It's a prototype of its divot tool. Is that right? This is not a prototype. As I showed in my brief, Mr. Jones admitted that he created the Divot Master that starts on 1503 using the GT Knives mechanism. And so what I'm showing... You've got a couple of minutes. You better draw us into something. I'm going to draw you something into this. So the court's reasoning why it said the GT Knives would fail in dirt is because this key in biscuit mechanism would get clogged with dirt, trapped with dirt, and it therefore couldn't function. But what GT Knives did was made the Divot Master. And when you take it apart and you look at the Divot Master taken apart, compare its mechanism to the GT Knives mechanism, they all have a... On 1508, it shows all of the mechanisms. When you're showing us that instead of the prior art switchblade knife, which is what the district court was looking at? Because GT Knives, the way the claim construction was done, the GT Knives invalidate the patent because they anticipate the patent. What page is an exploded diagram of your client's product? There is no picture here of my client in this. There's no exploded exhibit. We stipulated that Mr. Moore's and Remedy Golf's product infringed if claim one was valid. But what you have here is basically GT Knives taking their switchblade and switching it to a fork. And then later on when they got to plastic, they switched this biscuit to a piece of rod. Well, the point we made at trial was if you look at the GT Knives, it reads on all the claims. The GT Knives have a blade, it locks in the open position, locks in the closed position. It's the round circular object at the bottom of all three mechanisms. But the point that was tried to be made of this as far as invalidity goes. Are there three mechanisms or four? There's four. There's four mechanisms. So when you say all three, you meant all four? All four. But the three knives are the first ones. So you have the three knives and then the divot master which is made. The light just turned red. I'm going to give you a minute to actually try and tie this together. Invalidity, the argument was that the GT Knives operated in the same fashion as the divot tool, the divot master. If you can look at the patent, the way the claim construction was, the GT Knives read on the claims and therefore the patent's invalid. But when we went to obviousness, you take the GT Knives plus the other items that we introduced as prior art combined. There's nothing more than a combination of known prior art and therefore the patent should be obvious as well as anticipated by the GT Knives. Thank you.